IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Antonio Marco Herrera,<br>    Plaintiff,<br><br>v.<br><br>Harold W. Clarke, <u>et al.</u>,<br>    Defendants. | )<br>)<br>)<br>)    1:19cv1301 (LO/JFA)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Antonio Marco Herrera ("Herrera" or "petitioner"), a Virginia inmate proceeding <u>pro se</u>, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his May 22, 2006 convictions for two counts of first-degree murder in the Circuit Court of Henrico County, Virginia. [Dkt. No. 1].[1] The respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. The petitioner was given the opportunity to file responsive materials pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) to the motion to dismiss and has responded and moved for a default judgment. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the Court has determined that respondent's Motion to Dismiss will be granted, and the petition dismissed with prejudice.

### I. Background

Herrera murdered Hector Perez and Jose Eduardo Trinidad Ortiz at the London Towne Apartments in Henrico, Virginia on May 23, 2003. [Dkt. Nos. 1 at 40; 30-6 at 1]. On the same date, Herrera murdered Mario Gonzalez and Mynor Catalan while in a car with both victims

---

[1] Before the Court could order a response, Herrera filed an interlocutory appeal, which the Fourth Circuit dismissed for lack of jurisdiction on September 29, 2020. [Dkt. No. 15]. Herrera has also filed a writ of error coram nobis in the Fourth Circuit, which the Fourth Circuit denied on December 21, 2020 [Dkt. No. 21]; <u>In re Herrera</u>, 831 F. App'x 639, 640 (4th Cir. 2020), and a writ of mandamus that the Fourth Circuit denied on March 23, 2021. [Dkt. No. 43].

while the car was parked in a park in Richmond, Virginia. [Dkt. No. 30-6 at 1]. Herrera alleges that he first learned of the murders six months later from Roberto Del Cid in North Carolina. [Dkt. No. 38 at 1].[2] Herrera and Del Cid were arrested in Wilson, North Carolina on January 4, 2004. [Id. at 2].[3]

The grand jury indicted Herrera on July 11, 2005 for two counts of first-degree murder in violation of Virginia Code § 18.2-32 (Ortiz and Perez); three counts of use of a firearm during a designated felony in violation of Code § 18.2-53.1, and one count of breaking and entering while armed in violation of Code § 18.2-90. Case Nos. CR05-2930-00F through -2935-00F. On February 3, 2006, pursuant to a plea agreement, Herrera entered guilty pleas to two counts of first-degree murder.[4] In exchange for his guilty pleas, the Special Prosecutor agreed not to seek the death penalty or bring additional capital charges for the murders of Gonzalez and Catalan in Richmond. [Dkt. Nos. 30-2, 30-6]. The prosecution also agreed to nolle prosequi the remaining

---

[2] The record establishes that when Herrera refers to his "co-defendant" in his pleadings, he is referring to Del Cid. [Dkt. No. 30-6 at 2]. Herrera was also convicted of the murders of Gonzalez and Catalan on May 23, 2003 in Richmond, Virginia. [Id.]. The Richmond Circuit Court records establish that Herrera pleaded guilty to the Richmond murders on March 3, 2006 and he was sentenced on May 22, 2006. See http://www.courts.state.va.us/ (click on Case Status and Information, click on Circuit Court, Information, select Richmond City Circuit Court, and search "Herrera, Antonio"); Commonwealth v. Herrera, CR06F-704-00 and -705-00. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (collecting cases); see, e.g., Lynch v. Leis, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online). Herrera was sentenced to life for each Richmond murder. [Dkt. No. 30-6 at 2].

[3] This section includes admissions made by Herrera, state court records, and affidavits and documents filed in the state habeas proceedings. There are no transcripts of the state criminal proceedings because Herrera waited more than ten years after he was convicted to file a state habeas petition and the tapes of the hearings are only "kept for ten years." [Dkt. 30-5 at 3].

[4] The plea agreement was written in English and Spanish. Herrera, his attorney, and the prosecutors signed both, and both versions of the plea agreement were filed with the circuit court. [Dkt. No. 30-2].

Henrico charges — three counts of use of a firearm carrying, which carried a mandatory minimum sentence of three years each; and one count of burglary while armed with a deadly weapon. Id. There was no agreement as to sentence on the Henrico murders, and after hearing argument from counsel, the circuit court sentenced Herrera to life imprisonment for each conviction. Id.

Prior to accepting Herrera's guilty pleas, the circuit court examined him to ensure that his pleas were knowingly and voluntarily entered, found that Herrera "fully understood the nature and effect of his pleas and of the penalties that may be imposed upon his conviction and of the waiver of trial by jury and appeal," then found that Herrera's guilty pleas were "voluntarily and intelligently entered," and found Herrera guilty as charged in each indictment. Case Nos. CR05-2930-00F and -2932-00F. [Dkt. No. 30-1 at 1-2]. On April 28, 2006, the circuit court considered the presentence report, filed it with the record, and sentenced Herrera to life in prison for each murder, and dismissed the remaining four indictments. [Id. at 3-4]. The final order was entered on May 22, 2006. Id. at 4].

The state habeas proceedings established that Herrera had a Spanish interpreter with him when he conversed with his attorney in and out of court, and also had an interpreter to assist him in all court proceedings. Herrera neither expressed any difficulty in understanding the proceedings against him nor did he have any difficulty in assisting his attorney in his defense. Herrera's counsel went over the plea agreement with him, prepared him for the plea colloquy, and Herrera at no time indicated he did not understand the plea agreement or the proceedings taking place. [Dkt. No. 30-6 at 2].

On March 25, 2018, Herrera executed a state habeas petition and filed it in the Circuit Court of Henrico County. Case No. CL18-2779. The circuit court found the petition was

3

untimely, barred by the equitable doctrine of laches, and that the claims had no merit. In finding the claims were barred by laches, the circuit relied on the inability to produce a transcript of the criminal proceedings because Herrera had waited more than ten years after his convictions were final and the tapes of the hearings are only "kept for ten years;" his attorney's practice was to "purge files after 5 years or after relevant appeal or Habeas time limits have run, whichever is longer" [Dkt. No. 30-6 at 1]; and Herrera was aware of his right to file a state habeas petition at least as early as March 27, 2008 because that is the date on the letter he wrote to the circuit court seeking an extension of time until April 28, 2008 to file a habeas petition. [Dkt. 30-5 at 3].[5] The petition was dismissed on July 2, 2018 and a corrected final order was entered on July 20, 2018.

Herrera noted a timely appeal and he filed a timely petition for appeal on July 25, 2018. The Supreme Court of Virginia refused Herrera's petition for appeal on July 8, 2019 finding no reversible erroring the circuit court's judgment. Record No. 180976.

On or about October 3, 2019, the Herrera filed the instant federal petition for writ of habeas corpus, and he raises the following claims:

1. "Petitioner's guilty plea was obtained as a result of ineffective assistance of counsel" because:
   a. Counsel failed to present DNA and fingerprint evidence to "clear[]" the petitioner at trial;
   b. There was "no evidence that connected the petitioner to these crimes;"
   c. his confession was coerced, and counsel should have had it suppressed;
   d. his attorney failed to "make reasonable investigation for the defense;" and

---

[5] Virginia's habeas statute of limitations provides a habeas petition challenging a criminal conviction "shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code Ann. § 8.01-654. April 28, 2008 was two years after the date Herrera was sentenced but his sentencing order was not entered until May 22, 2006. Accordingly, the latest Herrera could have filed a state habeas petition was May 22, 2008.

4

  e. his attorney failed to investigate his competency before trial. (Dkt. No. 1 at 5).

2. Herrera's counsel was ineffective because Herrera's "guilty plea was entered without [his] having full understanding of the plea and consequences." (Id. at 7).

3. Herrera's "counsel was laboring under [a] prejudicial conflict of interest." (Id. at 8).

4. Herrera is actually innocent of the crimes resulting in a miscarriage of justice. (Id. at 10).

## II. Respondent's Motion to Dismiss

Respondent moves to dismiss Herrera's § 2254 petition as untimely under 28 U.S. § 2244(d)(1), the claims are defaulted, and as having no merit.[6]

*A. Statute of Limitations*

Herrera was sentenced on April 28, 2006 but his final sentencing order was not entered until May 22, 2006. Because he did not appeal his convictions, the "time for seeking direct review" expired thirty days later on June 21, 2006. See Va. Sup. Ct. R. 5A:6. The one-year period under § 2244(d)(1) for filing for federal habeas relief began to run as of June 21, 2006 and expired on June 21, 2007.[7] Further, since Herrera's state habeas petition was not timely filed, the period during which it was pending is not tolled. See Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) ("[T]ime limits, no matter their form, are 'filing' conditions. Because the state court

---

[6] Respondent also correctly notes that to the extent Herrera is attempting to raise a freestanding claim of actual innocence in his petition, such a claim is not cognizable in federal habeas corpus proceedings. See McQuiggin v. Perkins, 569 U.S. 383, 392 (2013); Herrera v. Collins, 506 U.S. 390, 404-05 (1993) ("We have never held that [habeas relief] extends to freestanding claims of actual innocence."); Buckner v. Polk, 453 F.3d 195, 199 (4th Cir. 2006) ("[C]laims of actual innocence are not grounds for federal relief even in a capital case."); Rouse v. Lee, 339 F.3d 238, 255 (4th Cir. 2003) (noting that "claims of actual innocence are not grounds for habeas relief even in a capital case."). "[A] credible showing of actual innocence[, however,] may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief." McQuiggin, 569 U.S. at 392. See infra at 6.

[7] Gonzalez v. Thaler, 565 U.S. 134, 154 (2012) (holding that where a state prisoner "does not seek review in a State's highest court, the judgment becomes 'final' under §2244(d)(1)(A) when the time for seeking such review expires," and rejecting argument that such cases should "incorporate the 90-day period for seeking certiorari in determining when [a petitioner's] judgment became final").

rejected petitioner's [] petition as untimely, it was not 'properly filed' and he is not entitled to statutory tolling under § 2244(d)(2)."). Herrera admits his federal habeas petition is untimely and seeks equitable tolling based upon what he characterizes as "new evidence" that establishes he is actually innocent, as well as his alleged difficulty with the English language and pro se status. [Dkt. Nos. 1 at 13].

An untimely habeas petition may be reviewed if the petitioner demonstrates an entitlement to equitable tolling, see Pace, 544 U.S. at 418, or through a showing of actual innocence, see McQuiggin, 569 U.S. at 392. To qualify for equitable tolling, a petitioner must demonstrate that "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010); Pace, 544 U.S. at 418. "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." Menominee Indian Tribe v. United States, 136 S. Ct. 750, 756 (2016); see Carpenter v. Douma, 840 F.3d 867, 872 (7th Cir. 2016) (noting Supreme Court had recently reiterated that the extraordinary circumstances element is met "'only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control.'") (quoting Menominee Indian, 136 S. Ct. at 756) (emphasis added).

"[E]ven in situations in which equitable tolling initially applies, a party must file suit within a reasonable period of time after realizing that such a suit has become necessary." Walker v. Frank, 56 F. App'x. 577, 582 (3d Cir. 2003). "A grant of equitable tolling, unlike statutory tolling, does not shift the deadline so that each day of tolling results in a one-day postponement of the deadline." Ragan v. Horn, 598 F. Supp.2d 677, 680 (E.D. Pa. 2009) (citing Phillips v. Heine, 984 F.2d 489, 492 (D.C.Cir.1993)), rev'd on other grounds, 411 F. App'x 491 (3d Cir. 2011). Once the extraordinary circumstances justifying equitable tolling have ended, the petitioner must file as soon as reasonably possible. Id.; Colwell v. Tanner, 79 F. App'x. 89, 92

(6th Cir. 2003) (equitable tolling continues only for the time during which "the conditions that served to justify equitably tolling the statute of limitations" existed); see also Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch., 167 F.3d 1170, 1175 (7th Cir. 1999) (tolling does not provide "an automatic extension of indefinite duration" and the plaintiff must file within a reasonable period of time).

To establish actual innocence, "[new] evidence must establish sufficient doubt about [a petitioner's] guilt to justify the conclusion that his [incarceration] would be a miscarriage of justice *unless* his conviction was the product of a fair trial." Schlup v. Delo, 513 U.S. 298, 316 (1995) (emphasis in original). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence, id. at 324, and the court may also consider how "the credibility of the affiants bears on the probable reliability of that evidence." Id. at 332.

Herrera's allegedly "new evidence" of actual innocence has no merit. In the first instance, the evidence is not new. Herrera relies upon three Certificates of Analysis: a fingerprint Certificate of Analysis dated January 25, 2006 [Dkt. No. 38 at 22-25]; a DNA Certificate of Analysis dated August 5, 2003 [Id. at 26-30]; and a DNA Certificate of Analysis dated October 7, 2003. [Id. at 31-35]. All three forensic reports were attached to his state habeas petition [Dkt. No. 30-3 at 18-31], and each forensic report was provided to Herrera's trial counsel prior to the entry of his guilty pleas on February 3, 2006. [Dkt. Nos. 30-3 at 6; 40 at 2-3]. Herrera's lack of due diligence is emphasized by his lack of candor by failing to explain when, specifically, he obtained the forensic reports that he attached to his state habeas petition. See Redmond v. Jackson, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) (declining to toll statute because petitioner did "not indicate when he discovered the factual predicate of his claims); see also Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) ("Frazier never identifies

7

when or how he discovered his 'new evidence,' and his contention that he could not have discovered it sooner with due diligence is unsupported and conclusory.").

In his state habeas petition, Herrera averred that his attorney "knew" about the DNA and fingerprint evidence on March 3, 2006. [Dkt. No. 30-3 at 6]. Since the state habeas petition was executed on March 25, 2018, Herrera had to have obtained not only possession of the forensic reports at some time prior to that date, but also had a basis for determining what his attorney "knew," which Herrera has also not provided. Nevertheless, despite knowing about the reports in March 2018, Herrera did not file a federal habeas petition for well over 18 months.[8]

Even if one were to assume diligence, however, the forensic reports themselves do not establish a gateway claim of actual innocence. As noted in the state habeas proceedings, the two DNA certificates were dated in 2003, which was long before Herrera was arrested and therefore well before a DNA sample from Herrera could have been obtained and used in a comparison. [Dkt. No. 30-6 at 2]. The fingerprint analysis implicated Herrera's co-defendant Del Cid in the Henrico murders, and Del Cid was prepared to testify against Herrera in the Henrico prosecutions. [Id.] Herrera's trial counsel noted in the state habeas proceeding that "Herrera was aware that Delcid [sic] was prepared to testify against him and, given [Herrera's] own confession to the murders, [Herrera] reasonably concluded that it was in his best interest to seek a plea deal." [Id.].

---

[8] In Ragan, the district court noted that due to the "fact-specific inquiry, courts have reached widely different conclusions as to what constitutes reasonable diligence" finding a case in which waiting 87 days did not demonstrate reasonable diligence but another in which a year was deemed diligent. 598 F. Supp.2d at 681-82. While periods of less than 100 days were found to warrant equitable tolling, periods of four months or more generally did warrant equitable tolling. Id. at 682; see, e.g., Walker v. Frank, 56 F. App'x. 577, 582 n. 5 (3d Cir.2003) (eleven months after the alleged extraordinary circumstance ends is an unreasonable time to wait to file a habeas corpus petition); Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001) (waiting over four months to file habeas petition was not expedient enough to warrant equitable tolling); Fisher v. Johnson, 174 F.3d 710, 715-16 (5th Cir. 1999) (no equitable tolling where petitioner waited additional six months to act, after elimination of alleged extraordinary circumstances).

Herrera's assertion he lacked proficiency in reading and writing English is belied by the record and is certainly not something that was beyond his control. While the Second Circuit has expressly declined to hold that equitable tolling should apply whenever a state failed to provide translation services to a non-English-speaking prisoner, it observed that a prisoner has "a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his language deficiency." Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008); Yang v. Archuleta, 525 F.3d 925, 930 (10th Cir. 2008) (language deficiency must be coupled with proof of independent and diligent effort to overcome the prisoner's disabilities by alternative means and petitioner failed to establish extraordinary circumstances where he has not "set forth what actions he pursued to secure assistance with his language barrier inside or outside prison boundaries"); Mendoza v. Carey, 449 F.3d 1065, 1069 (9th Cir. 2006) (it is the petitioner's burden to establish that he did not have access to a means of translation during the relevant period); cf. Mendoza v. Minnesota, 100 F. App'x. 587, 587-88 (8th Cir. 2004) (lack of fluency in English does not constitute an extraordinary circumstance that warrants equitable tolling); Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002) ("An inability to speak, write and/or understand English, in and of itself, does not automatically" justify equitable tolling.). In Herrera's case, the record establishes that Herrera not only had access to translation services but also that he was able to communicate, in English, with the circuit court at least as early as March 2008.

While at Wallens Ridge State Prison from December 11, 2007 through January 31, 2018, Herrera had access to a staff interpreter, who was fluent in Spanish, and a commercial translation service available to inmates by telephone. [Dkt. No. 30-7 at 1-2]. In addition, the circuit court record contains several letters written by Herrera, in English, after his sentencing: a letter requesting records and information dated February 6, 2008; a letter requesting an extension of time to file a habeas petition dated March 27, 2008; a letter requesting preparation of his plea transcript and to be provided with a free copy of the transcript dated November 16, 2009; a letter

9

inquiring about fines, costs, restitution associated with Case No. CR05-2930-00F dated March 22, 2012; a letter requesting an in forma pauperis form dated February 1, 2016; a letter inquiring if the indictments for Case Nos. CR05-2930-00F and -2932-00F were returned in open court dated June 5, 2017; a letter requesting copies of warrants, indictments, court orders, and the order reflecting the grand jury indictments were returned in open court dated June 28, 2017.

Yet, despite having access to language translation services as early as December 11, 2007, and evidence that he had no difficulty in communicating with state courts from 2008 through 2017, Herrera did not file a habeas petition in state court until March 2018. In sum, the record establishes not only that Herrera was able to communicate with the circuit court as early as 2008 in English, well before his state habeas proceeding, but that he also had translation assistance if needed. See Gutierrez v. Harkleroad, No. 1:11cv162, 2011 U.S. Dist. LEXIS 102318 *13-18 (M.D.N.C. Sept. 9, 2011) (concluding that the petitioner's claim that he could not speak English and needed assistance in having documents translated did not warrant equitable tolling) (collecting cases).

Next, Herrera's assertion that he was ignorant of the law is not a basis for equitable tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) ("ignorance of the law is not a basis for equitable tolling") (collecting cases). Neither unfamiliarity with the legal process (whether the unfamiliarity is due to illiteracy or any other reason), ignorance of the law, lack of representation during the applicable filing period, nor pro se status merits equitable tolling. Id. ("even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling"); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citation omitted); Turner v. Johnson, 177 F.3d 390, 391 (5th Cir.1999).

Finally, as noted, equitable tolling does not extend the statute of limitations and an untimely state habeas petition does not toll the statute of limitations. See supra at 5-7. Despite

10

clearly having no language difficulties by March 25, 2018 when he filed his state habeas petition, Herrera did not execute his federal habeas petition until October 3, 2019, which was over 19 months after his alleged extraordinary circumstance had evaporated and his federal petition therefore untimely. It is of no moment to argue that exhaustion of state remedies was required before filing in federal court because the Supreme Court has expressly sanctioned filing a federal petition and asking to stay the federal petition to allow for exhaustion in state court where the state petition could result in a dismissal as untimely, which would negate tolling while the state proceedings were pending. The Supreme Court held "[a] prisoner seeking state postconviction relief might avoid this predicament ... by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." Pace, 544 U.S. at 416 (citing Rhines v. Weber, 544 U.S. 269, 278 (2005)); Hyman v. Keeler, 2011 U.S. App. LEXIS 15161 at *30 (4th Cir. Aug. 10, 2011) (holding Pace "extended the Rhines rationale beyond mixed 2254 petitions."); see also Dreyfuse v. Pszczokowski, No. CV3:16-06717, 2017 U.S. Dist. LEXIS 28034 at *43-44 (S.D.W. Va. Jan. 6, 2017) (noting Third, Fourth, Seventh, Ninth, and Tenth Circuits have extended Rhines stay and abey procedure to unmixed petitions), adopted by, 2017 U.S. Dist. LEXIS 26738 (S.D. W. Va. Feb. 27, 2017). See, e.g., Freeman v. Page, 208 F.3d 572, 577 (7th Cir. 2000) ("a prisoner who wants to pursue state relief while assuring an entitlement to federal relief can protect himself by filing in both courts. The federal action should be stayed while the state court decides what to do.").

Herrera has not carried his burden of establishing he is entitled to equitable tolling and his habeas petition is barred from consideration as untimely. Further, the stay and abey procedure establishes that it was not beyond Herrera's control to have filed his federal petition over 19 months prior to when he actually filed it. The federal petition is untimely and will be dismissed.

*B. Exhaustion and Default*

In state court, all of Herrera's federal claims, with the exception of Claim 1(b), were raised in state court and found to be untimely under the state statute of limitations.[9] Claim 1(b) is nevertheless deemed exhausted and defaulted because if Herrera returned to state court the claim would be deemed procedurally barred as untimely and successive. See Va. Code §§ 8.01-654(A)(2); 8.01-654(B)(2); see Bassett v. Thompson, 915 F.2d 932, 936-37 (4th Cir. 1990) (an unexhausted claim, which would be held defaulted if the petitioner were to return to state court, is deemed simultaneously exhausted and defaulted for purposes of federal habeas review). Virginia's habeas statute of limitations is an independent and adequate state procedural rule that bars federal review. Walker v. Martin, 562 U.S. 307, 321 (2011) (state statutes of limitations may be an independent and adequate state law ground barring federal habeas review); Sparrow v. Dir., Dep't of Corrs, 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006) (finding claims simultaneously exhausted and defaulted in federal habeas actions because claims not presented in state court would now be time barred by adequate and independent default of Virginia Code § 8.01-654(A)(2)). Likewise, Virginia's bar on successive petitions in Code § 8.01-654(B)(2) is considered an adequate and independent state ground. See Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997). Accordingly, all of Herrera's claims are deemed defaulted.

Federal courts may not review defaulted claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the

---

[9] The circuit court found the claims were barred as untimely and the Supreme Court of Virginia refused the petition for appeal in a summary order finding no reversible error. Under the "look through" doctrine, a federal court will "look through" later state court decisions to the last reasoned decision when reviewing a state court denial of claims raised in a habeas petition. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

12

state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton v. Muncy, 845 F.2d 1238, 1241-42 (4th Cir. 1988). A court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996). Herrera asserts his lack of fluency in English and unfamiliarity with the law are the cause to excuse his default and his prejudice is his "new evidence" that he alleges establishes his actual innocence. [Dkt. Nos. 38 at 12; 40 at 11].

Herrera's unfamiliarity with the English language is insufficient to establish cause to excuse his procedural default because such alleged unfamiliarity is not "external to [his] defense." Bonilla v. Hurley, 370 F.3d 494, 498 (6th Cir. 2004); Vasquez v. Lockhart, 867 F.2d 1056, 1058 (8th Cir. 1988)) (pro se status and language barrier are insufficient to excuse procedural default); see also Bastista v. U.S. Dep't of Justice, 129 F. App'x. 724 (3d Cir. 2005) (finding that prisoner's inability to speak English did not constitute cause for procedurally defaulting disciplinary appeal). The Court has already addressed why the new evidence (DNA and fingerprint Certificates of Analysis) do not establish actual innocence. See supra at 7. Herrera has neither established cause nor prejudice to excuse his default, which renders the present petition is barred from federal review for this reason as well.[10]

---

[10] Herrera's ineffective assistance of counsel claims are not reviewable under the limited exception outlined in Martinez v. Ryan, 566 U.S. 1, 9 (2012), which allows review of certain ineffective assistance of counsel claims. Martinez may excuse certain state defaults in limited circumstances, but it does not excuse an untimely federal habeas petition or provide tolling under the AEDPA. Id.; see also Arthur v. Thomas, 739 F.3d 611. 631 (11th Cir. 2014) (holding the narrow Martinez exception does not save an untimely habeas petition because the exception is meant to be difficult to meet "to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism."). Although Claim 1(b) was not raised in the state habeas petition and is defaulted, Martinez does not save it because it is not a "substantial one" because it has no "merit." 566 U.S. at 14. The claim alleges counsel was ineffective because there was no evidence that connected Herrera to the crimes. The record demonstrates that Herrera confessed to the crimes and that his co-defendant Del Cid was prepared to testify against him.

Because all of the claims in the petition will be dismissed as untimely under the federal statute of limitations and Herrera has not established either cause or prejudice to excuse the defaults, respondent's other arguments do not need to be considered.

### III. Default Judgment

Herrera moves for the entry of a default judgment [Dkt. No. 33] asserting the respondent did not file a response to the petition within thirty days of the Court's December 21, 2020 order directing a response be filed. [Dkt. No. 23]. Respondent filed a Motion to Dismiss and Rule 5 Answer, with supporting brief and attachments as well as a Roseboro notice, on January 15, 2021. [Dkt. Nos. 28-30]. Respondent's pleadings were timely and there is no basis for Herrera's motion. Herrera attempts to use Respondent's February 10, 2021 motion to amend [Dkt. No. 34], which seeks leave to amend the timely filed pleadings to indicate that the state court records were not requested on January 15, 2021 due to an oversight by respondent's counsel, as evidence of default. Respondent's motion to amend pursuant to Federal Rule of Civil Procedure 15(a) is proper and will be granted.

Moreover, granting default judgment is not appropriate in habeas corpus petitions. Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir. 1987) (default judgments are not contemplated in habeas corpus cases) (citing United States ex rel. Mattox v. Scott, 507 F.2d 919 (7th Cir.1974); Allen v. Perini, 424 F.2d 134 (6th Cir. 1970)). The delay in the receipt of the state court records has neither caused any delay in this proceeding nor prejudice to the petitioner. See Stines v. Martin, 849 F.2d 1323, 1324-25 (10th Cir. 1988) (default judgment in a habeas matter is inappropriate when delay was minor and apparently an isolated and inadvertent mistake and the court was not placed in the position of either delaying the proceedings or deciding this matter without benefit of respondent's briefing); Sparrow v. United States, 174 F.R.D. 491, 493 (D.

Utah 1997) (where a delay is not so "'extensive or egregious [so as] to constitute a violation of [the petitioner's] due process rights,'" a petitioner should not be allowed to "'snap up' a default and obtain relief without consideration of substantive issues in the case.") (citation omitted). Petitioner's motion [Dkt. No. 33] will be denied.

### III. Conclusion

For the foregoing reasons, respondent's Motion to Amend [Dkt. No. 24] is granted and the Amended Motion to Dismiss [Dkt. No. 35] is deemed filed; the Motion to Dismiss [Dkt. No. 34] as amended is granted; the Motion for Default Judgment [Dkt. No. 33] is denied; and this petition will be dismissed with prejudice. An appropriate Order and judgment shall issue.[11]

Entered this 22nd day of April 2021.
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[11] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Herrera fails to meet this standard.